## EWALD v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9682.

Circuit Court of Appeals, Sixth Circuit.

April 3, 1944.

Henry S. Slyfield and Garland D. Tait, both of Detroit, Mich. (Henry S. Slyfield, Edgar M. Reitz, and Garland D. Tait, all of Detroit, Mich., on the brief), for petitioner.

Robert Koerner, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Helen R. Carloss, and Robert Koerner, all of Washington, D. C., on the brief), for respondent.

Before HICKS, HAMILTON, and McALLISTER, Circuit Judges.

HAMILTON, Circuit Judge.

Petitioner asks for a review of the decision of the Tax Court of the United States upholding the determination by the respondent of income tax deficiencies against the petitioner for the years 1936, 1937, 1939 and 1940.

Petitioner on June 27, 1929, created in writing an irrevocable trust in favor of herself and her children and their descendants. She named her husband, Henry T. Ewald, trustee and empowered him to distribute to petitioner during her lifetime such portions of the net income from the trust as he might deem proper and upon her death the trustee was likewise empowered to pay the income of the trust to her surviving children or their descendants. In case of the death of her husband trustee, successor trustees were named by the settlor and detailed provisions were made in the trust instrument for disposition of the income and also the corpus of the trust under the successor trustees. The trust instrument made no provision for the disposition of the trust corpus and accumulated income if the settlor predeceased her husband.

Petitioner for each of the years in question reported in her taxable net income the sums paid to her out of the income of the trust. The trustee reported and paid taxes on the remainder for each of the years. The Commissioner of Internal Revenue held that the total annual net income of the trust was taxable to the petitioner under the provisions of Section 167(a) (2) of the Revenue Act of 1936, Title 26 U. S.C.A. Int.Rev.Code, § 167. The Tax Court sustained the Commissioner.

The statute in question provides:

"(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor;

\*　　\*　　\*　　\*　　\*

then such part of the income of the trust shall be included in computing the net income of the grantor."

■ Petitioner insists that her husband trustee has a substantially adverse interest to her in the disposition of the income of the trust because (a) the undistributed income and corpus of the trust will revert to her estate in the event she predeceases her husband and that in that event her husband will take an interest in her estate under the statutes of descent and distribution of Michigan (Act 314 of Michigan Public Acts of 1915, Ch. LVII, sec. 7); (b) that she, on October 4, 1934, with the knowledge and consent of her husband, executed her last will and testament in which she made her husband her principal beneficiary.

Viewing the trust here in question from the standpoint of petitioner's husband, his interest therein is at most the mere expectation that the settlor will predecease him, or that he will take under her will at her pleasure. In view of the relationship of the parties, the husband may properly hope that he will share in his wife's estate if she predeceases him. This possibility in legal contemplation is no right at all because the settlor has done nothing to create an obligation in any event, and the husband has neither a present nor a contingent interest in either the income or corpus of the trust.

The corpus of the trust consisted of 4,000 shares of the capital stock of the Campbell-Ewald Company which was given petitioner by her husband. The corporation was organized under the laws of the state of Delaware and engaged in business as a national advertising agency. Petitioner's husband, Henry T. Ewald, owned the remaining 4,845 shares of the stock and was its president at the time petitioner created the trust and has been since that time.

The phrase "substantial adverse interest" was substituted in the 1932 Revenue Act,

26 U.S.C.A. Int.Rev.Code, § 167, for the phrase "any person not a beneficiary of the trust." Revenue Act 1928, § 167, 26 U. S.C.A. Int.Rev.Acts, page 407. A tax reduction practice had grown up under the earlier acts by grantors reserving power to revest title to the trust corpus in conjunction with a beneficiary having a very minor interest or of conferring the power to revest upon a person other than a beneficiary who would act at the behest of the grantor. Because of these practices, Congress in the Revenue Act of 1932 adopted the phrase with which we are here concerned. The declared purpose of the statute was to prevent the evasion of taxes by means of the use of trusts. Finance Committee Report No. 665, 72nd Cong. 1st Sess., p. 34.

The case at bar is a fair illustration of the reduction of taxes by the division of income among an intimate family group by the use of a trust.

The husband transferred to his wife almost one-half of the shares of the stock of his personal service corporation reducing his taxable income and relieving him of a heavy surtax burden. His wife, in turn, attempted to create another taxable entity in the form of a trust. If petitioner's contention is sustained, the income from a single family source is divided first into approximately two parts and then subdivided into such other parts as the head of the family elects. Reduction of taxes in this very manner was what Congress sought to prevent by the statute in question.

■ The application of the phrase a "substantial adverse interest" turns largely on a question of fact viewed in the light of the legal principles applicable to the interests created by the trust instrument. It includes one who has a vested or a contingent remainder in the corpus or its accumulations. It does not include one who has the hope of inheriting the corpus of the trust by reason of his being the heir apparent or presumptive or by reason of the expectation of a devise or bequest on account of supposed or presumed affection of his ancestor or on account of the relationship of husband and wife. The word "substantial" is susceptible of different meanings according to the circumstances of its use and is variously defined as actual, essential, material or fundamental. Ap-

plying the word in its setting in the present act, we are of the opinion that in order for a trustee to have an interest adverse to the cestui que trust, such interest must be direct in the trust income or corpus, although its vesting may be contingent.

■ Petitioner urges that the assessment of the deficiencies for the calendar years 1936 and 1937 was barred on March 13, 1942, the date of respondent's deficiency letter. Section 275(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 275(a), provides that the amount of income taxes imposed by the act shall be assessed within three years after the return was filed. Section 275(c) provides that if the taxpayer omits from gross income an amount properly includable therein, which is in excess of twenty-five percentum of the amount of gross income stated in the return, the tax may be assessed within five years after the return was filed.

Since petitioner omitted from her original return more than twenty-five percent thereof when the whole income of the trust for the years in question is included, the only issue is whether subsection (c) is applicable.

The Internal Revenue Agent in charge of the Detroit, Michigan, office notified petitioner that additional income taxes would be recommended for the year 1934 on the ground that all of the income of the trust was taxable to her under Section 167 of the Revenue Act of 1934. Petitioner filed a protest, contending that Henry T. Ewald, as trustee, had a substantial adverse interest in the disposition of the trust income and that only the part of the trust income actually distributed to her in 1934 was properly taxable to her, the undistributed portion being taxable to the trustee. After a conference was held on April 8, 1936, a ruling was issued on June ·2, 1936, by the Commissioner holding that petitioner was properly taxable only on that portion of the trust income actually distributed to her.

Subsection (c) of the statute first appeared in the Revenue Act of 1934, 26 U. S.C.A. Int.Rev.Code, § 275(c). The bill originating in the House amended Section 276 of the 1932 Revenue Act which related to false returns or no returns and which carried no period of limitation. It was stated in the Ways and Means Committee

report that "It is not believed that the taxpayers who are so negligent as to leave out of their returns items of such magnitude should be accorded the privilege of pleading the bar of the statute." No. 704, 73rd Cong., 2nd Sess., p. 35. The Finance Committee of the Senate struck out the amendment to section 276 and amended section 275 to read in its present form. In the report of the Finance Committee, it was stated:

"The present law permits the Government to assess the tax without regard to the statute of limitations in case of failure to file a return or in case of a fraudulent return. The House Bill continues this policy, but enlarges the scope of this provision to include cases wherein the taxpayer understates gross income on his return by an amount which is in excess of 25 percent of the gross income stated in the return. Your committee is in general accord with the policy expressed in this section of the House Bill. However, it is believed in the case of a taxpayer who makes an honest mistake, it would be unfair to keep the statute open indefinitely." Report No. 558, 73rd Cong., 2nd Sess., p. 43.

In the conference report it was stated that the House receded and accepted the language of the section as provided in the Senate Amendment. Report No. 1385, 73rd Cong., 2nd Sess., p. 25.

It is clear that it was the congressional purpose to fix a longer period of limitation regardless of the intention of the taxpayer where the sum omitted from gross income was 25 percent or more. As we view it the act is so plain that it can have but one interpretation. The word "omits" is in no way qualified by the context of the Revenue Act. If it had been the intention of the framers of the act to qualify it so as to apply only to negligent omission, the word "negligently" easily could have been inserted. Ordinarily, the word "omit" means to disregard, to fail, forbear, neglect to mention, or to fail to insert or include. In fact, the meaning of the word includes the failure to do all things that could be done under the circumstances.

The court being of the opinion that all of the net income of the present trust was taxable to petitioner and that no part of the proposed assessment is barred by the statute of limitation, the decision of the Tax Court is affirmed.