*Decision will be entered under Rule 50.*

H. LESLIE LEAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49262.    Filed March 24, 1955.

*John J. Hyde, Esq.*, for the petitioner.
*David M. Scheffer, Esq.*, for the respondent.

---

OPINION.

FISHER, *Judge:* The parties have stipulated and agreed upon the correct amount of adjusted gross income realized by petitioner during 1947 and 1948. We have found, accordingly, that petitioner omitted from his reported adjusted gross income for each of those years $19,550.97 and $9,667.19, respectively. The only issue involved herein is whether this proceeding is barred by the statute of limitations (section 275 (a), Internal Revenue Code of 1939) since the notice of deficiency was not issued within 3 years after the returns were filed.

Respondent contends that proceedings in the instant case were properly commenced within 5 years after the returns were filed in view of the provisions of section 275 (c). That section states that "if a taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return," proceedings may be commenced within 5 years after the return was filed. Petitioner, on the other hand, contends that an amount of gross income sufficient to meet the requirements of section 275 (c) was not omitted from the return for each year. We agree with respondent for the reasons set out below.

To determine whether or not section 275 (c) is applicable in any year it is necessary to determine two amounts: (1) The amount of gross income "stated in the return"; and (2) the amount omitted from gross income which is "properly includible therein." If the latter amount exceeds 25 per centum of the former, section 275 (c) is applicable. Accordingly, we turn first to a determination of the amount of gross income stated in the return for each of the years in question.

Petitioner reported gross income during the years in question from four sources: his businesses, rentals, interest, and gain from sale of capital assets (in 1948 only). There is no dispute between the parties as to the amounts of reported gross income derived from the last three sources. The amount of reported gross income from business for each

year, however, requires some discussion. Regulations 111, section 29.22 (a)–5, provide in part as follows in this respect:

GROSS INCOME FROM BUSINESS.—In the case of a manufacturing, merchandising, or mining business, "gross income" means the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources. In determining the gross income subtractions should not be made for depreciation, depletion, selling expenses, or losses, or for items not ordinarily used in computing the cost of goods sold. * * *

In the instant case, the reported "gross income from business" is the reported gross profit, i. e., the total receipts less net cost of goods sold as set out in Schedule C of the return for each year. See items 1 (a), (b), and (c) of the schedule set out in our Findings of Fact. Petitioner, however, contends that the reported "net cost of goods sold" reflects many items which were not properly deductible from total receipts in determining the gross profit for each year. He argues that these amounts should have been deducted instead from gross profits as "other business expenses" in Schedule C in determining net profit for each year. The practical effect of petitioner's contention would be to increase the reported gross profit in each year (though leaving reported net profit and adjusted gross income unaffected), and thus to increase the total amount of reported gross income.

In this connection, the parties have stipulated and agreed, subject to respondent's objections with respect to relevancy and materiality, that the net cost of goods sold reported in the 1947 return contains items in a total amount of over $10,000 which petitioner now contends were improperly included as costs of goods sold. Moreover, petitioner submitted testimony of an experienced accountant to the effect that these and other items were improperly reported in the returns as costs of goods sold (instead of as other business deductions) for each year in question. (With respect to 1948 such evidence is contrary to paragraph 19 of the stipulation of facts.) Were the returns adjusted according to petitioner's contention, the reported gross profit for 1947 would be $66,443.32 instead of $28,673.25, and that for 1948 $67,599.38 instead of $33,092.71. If the reported gross income were so increased for each year, 25 per centum thereof would be increased to such an extent that petitioner's omissions from gross income would not be large enough in the instant case to extend the statute of limitations to 5 years pursuant to section 275 (c). Respondent objected to the introduction of this evidence and the objection was taken under advisement. We sustain respondent's objections on the ground that the evidence and testimony are immaterial to the determination of any issue involved in the instant case.

It is clear from section 275 (c) that the 25 per centum of gross income "stated in the return" is to be based upon the return as made

by the taxpayer and upon his computation of gross income therein. In *Carew* v. *Commissioner*, (C. A. 6, 1954) 215 F. 2d 58, affirming a Memorandum Opinion of this Court, the taxpayer was in a merchandising business within the scope of Regulations 111, section 29.22 (a)–5, *supra*. He reported a gross profit of $7,000.47 in his 1945 return but contended that his return should be revised and rearranged to show a gross profit of either $46,000 or $35,000 or $34,000 depending on the alternative method chosen. The first two of these methods, as in the instant case, involved reductions in the cost of goods sold as originally reported by the taxpayer. In holding that the 5-year statute of limitations was applicable to that case, the Court stated as follows (page 61) :

Although tax report form 1040 used by the taxpayer does not contain the term "gross income," it is nevertheless clear that the statement in his return of a gross profit of $7,000.47 was actually his statement of his "gross income" within the meaning of that term as used in § 275 (c). There was no obligation on the Commissioner to revise or reconstruct the return, and the taxpayer is bound by that statement of his gross income. * * *

The Court further stated (page 62) :

Section 275 (c) provides that if the taxpayer omits from gross income an amount properly includible which is in excess of 25 per cent of the *amount of gross income stated,* the deficiency tax may be assessed at any time within five years. Therefore, the amount of $7,000.47 which the taxpayer *stated* in his return is the controlling figure. There was no obligation on the Commissioner to change that *statement of gross income* by a reaudit or revision of the return, even though a complete reaudit or revision might have changed the figure of gross income. * * *

To the same effect, see *O'Bryan* v. *Commissioner*, (C. A. 9, 1945) 148 F. 2d 456, affirming 1 T. C. 1137.

We agree with the views expressed above, and we, therefore, hold that for purposes of applying section 275 (c) to the facts of the instant case the gross profit originally reported in the return may not be increased by the contended adjustment of items reported as costs of goods sold. Cf. *Ira Goldring*, 20 T. C. 79 (1953). Accordingly, evidence tending to show the propriety of such adjustments is immaterial to any issue in the instant case. It is unnecessary, for the same reason, for us to consider the evidence offered by respondent which was submitted in opposition to petitioner's contended adjustments.

As stated above, petitioner reported gross income during the years in question from four sources. See items 1 (c), 2, 3, and 4 of the schedule in our Findings of Fact. The amount of petitioner's gross income "stated in the return" within the meaning of section 275 (c), and 25 per centum thereof, are therefore determined as follows:

*Reported Gross Income*

| Source | 1947 | 1948 |
|--------|------|------|
| Gross profit from businesses | $28,673.25 | $33,092.71 |
| Rents | 336.00 | 336.00 |
| Interest | 49.36 | 31.29 |
| Gain from sale of capital assets | | 1,090.00 |
| Total | $29,058.61 | $34,550.00 |
| 25 per centum of total | 7,264.65 | 8,637.50 |

We turn now to a consideration of the amounts petitioner omitted from gross income within the meaning of section 275 (c). We have determined in our Findings of Fact that for each of the years 1947 and 1948 petitioner omitted from reported adjusted gross income $19,550.97 and $9,667.19, respectively. Section 22 (n) of the 1939 Code, then in effect, provides that the term "adjusted gross income" means gross income less deductions for certain enumerated expenses. Among those deductions are only two which are applicable to the instant case: Subsection (1), trade and business deductions, and subsection (4), deductions attributable to rents and royalties. Thus, in the instant case, unreported adjusted gross income for each year is necessarily attributable either to understatement of gross income or to such overstatements of section 22 (n) deductions, or to both.

With respect to business and rental deductions, the parties have stipulated, and we have found, that deductions attributable to rents were correctly stated in petitioner's return for each year in question, and that he incurred all expenditures which comprise his reported business deductions for those years. Accordingly, it is clear from the record that none of the unreported adjusted gross income for either of the years in question is attributable to overstated deductions, but all is attributable to understated gross income. It should be noted in this respect that respondent determined that petitioner was entitled to an additional business deduction for depreciation in 1947 in the amount of $449.91. Thus, in the 1947 return petitioner *understated* his business deductions. Since the determination of unreported adjusted gross income for that year reflects this additional deduction, that amount must be added back in order to determine the amount of understated gross income for the year. We therefore hold that gross income was understated in the 1947 return by $20,000.88, and by $9,667.19 in the 1948 return.

An understatement of gross income, however, may be attributable either to an omission of gross receipts or to an overstatement of items which are allowable against such receipts in the determination of gross income (i. e., costs of goods sold), or to both. With respect to 1947, the above understated gross income figure includes $4,748

which petitioner reported in his return for that year as an item of cost of goods sold. This amount, which was expended by petitioner for the construction of a railroad siding, was disallowed as an expense by respondent and the adjustment is not contested by petitioner herein. Petitioner does contend, however, that the disallowance of this expense item is not an omission from gross income within the meaning of section 275 (c). He cites *Uptegrove Lumber Co.* v. *Commissioner*, (C. A. 3, 1953) 204 F. 2d 570, reversing a Memorandum Opinion of this Court, and *Deakman-Wells Co.* v. *Commissioner*, (C. A. 3, 1954) 213 F. 2d 894, reversing 20 T. C. 610, in support of his contention.

In the instant case it is unnecessary for us to decide whether in a proper case we will follow the views expressed by the Court of Appeals for the Third Circuit in the above cases. But see *Estate of J. W. Gibbs, Sr.*, 21 T. C. 443, 447, 448 (1954). With respect to 1947, assuming *arguendo* that the $4,748 disallowed as an expense was not omitted by petitioner from his gross income within the meaning of section 275 (c), there remains $15,252.88 of understated gross income. The record clearly establishes that there were no other overstatements of expenses or costs of goods sold in the instant case. (Petitioner contends, *supra*, that some costs of goods sold should have been reported elsewhere in each return, but he does not contend that any were overstated.) Accordingly, we find that the $15,252.88 is attributable to unreported receipts which is gross income omitted from the 1947 return within the meaning of section 275 (c) even if the view of the Third Circuit were followed. Cf. *Carew* v. *Commissioner*, *supra*. Since this amount exceeds $7,264.65 (25 per centum of the gross income reported by petitioner in 1947), section 275 (c) is applicable.

With respect to 1948, respondent did not disallow any expense claimed by petitioner. On the contrary, the parties stipulated and agreed that they were correctly stated by petitioner in his 1948 return. Accordingly, all of the understated gross income in that year ($9,667.19) consisted of omissions of gross receipts from the return within the meaning of section 275 (c). Since this amount exceeds $8,637.50 (25 per centum of the gross income reported by petitioner in 1948), that section is applicable to extend the statute of limitations for 1948.

It should be noted that *H. A. Hurley*, 22 T. C. 1256 (1954), is not applicable to the instant case. In that case respondent established that there was an understatement of net income by the net worth method. Under that method, an understatement of net income could have resulted from overstatement of deductions, as well as from an omission of gross income in the return. Under the circumstances of that case, we held, in effect, that proof of understated net income did not establish *per se* an omission from gross income within the meaning

of section 275 (c). In the instant case, however, the record clearly establishes an understatement of gross income attributable to unreported receipts in excess of 25 per centum of the gross income reported in each return. Thus, the principle of the *Hurley* case is not here applicable.

*Decision will be entered under Rule 50.*