**William E. DAVIS, former Collector of Internal Revenue for the District of Alabama, Appellant,**

v.

**C. B. HIGHTOWER, Jr., Appellee.**

No. 15762.

United States Court of Appeals Fifth Circuit.

Feb. 29, 1956.

Davis W. Morton, Jr., Atty., H. Brian Holland, Asst. Atty., Ellis N. Slack, Atty., A. F. Prescott, Atty., Kenneth E. Levin, Dept. of Justice, Washington, D. C., Frank M. Johnson, Jr., U. S. Atty., Atley A. Kitchings, Asst. U. S. Atty., Birmingham, Ala., Lee A. Jackson, Atty., Department of Justice, Washington, D. C., for appellant.

Winston B. McCall, William S. Pritchard, Birmingham, Ala., Pritchard, McCall & Jones, Birmingham, Ala., of counsel, for appellee.

Before BORAH, TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment by the district court entered on a jury verdict in favor of appellee who sued the Director of Internal Revenue for refund of income taxes paid for the years 1946 and 1947.

█ The tax returns were filed on March 15, 1947 and March 15, 1948, respectively, for the years in question. Assessment of the additional taxes claimed for both years was made on March 6, 1952, more than three years after the returns were filed but less than five years. Having concluded that the additional assessments were barred by the statute of limitations when made, we shall recite only those facts which are necessary to an understanding of that determination, and thus eliminate completely the question presented to the jury on the correctness of the Commissioner's determination of taxable income.

The taxpayer was a merchant in York, Alabama, who as a separate activity owned a cotton warehouse. He bought substantially all the cotton raised in his county, and it is undisputed that during the year 1946 he made two sales to a single purchaser of 724 bales of cotton

which he had acquired in hundreds of transactions over the previous four years, and in 1947 he likewise sold to the same purchaser in two transactions 1243 bales of cotton, likewise acquired in several hundred transactions over the previous four year period. The sales were made in what is known as "call" transactions, by which is meant the cotton was delivered to the purchaser under an agreement that the price would await a future determination; part payment was made on delivery and the seller reserved the right to fix the date of closing; market price on the date selected became the agreed price for the cotton. The taxpayer testified that he bought the cotton to hold for an enhancement in value, which he denoted as purchases for investment. He also testified that he bought the cotton for resale. He, of course, made a profit only when he sold.

In filing his income tax returns for the years in question taxpayer claimed the profits from the sales, which were substantial, were capital gains, only 50% of which would be taxable to him under § 117(b) of the Internal Revenue Code.[1] Nearly five years after the filing of his first return and four years after filing the second, the Commissioner of Internal Revenue made an additional assessment of the taxes here involved, claiming that the profits represented gains from the sale of "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business", and thus within the exception contained in the definition of capital assets in § 117(a) (1).[2]

Although the undisputed factual background as sketchily presented above makes a rather strong case to support the government's contention that the only legal conclusion that could be drawn therefrom is that this property was held primarily for sale to customers in the ordinary course of business, we need not, in fact we should not, determine that issue, because we are faced with a challenge in limine to the Commissioner's power to make the assessment,[3] which

---

1. Internal Revenue Code of 1939, Title 26, U.S.C.A.:

    "§ 117. Capital gains and losses

    "(a) Definitions. As used in this chapter—

    "(1) Capital assets. The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *.

    "(b) Percentage taken into account. In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income: * * *

    "50 per centum if the capital asset has been held for more than 6 months."

2. Internal Revenue Code of 1939, Title 26, U.S.C.A.:

    "§ 117. Capital gains and losses

    "(a) Definitions. As used in this chapter—

    "(1) Capital assets. The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include

stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l)".

3. The relevant statute controlling this question is Internal Revenue Code of 1939, Title 26, U.S.C.A. § 275:

    "§ 275. Period of limitation upon assessment and collection

    "Except as provided in section 76—

    "(a) General rule. The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. * * *

    "(c) Omission from gross income. If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assess-

challenge, made by motion for summary judgment[4] and later by motion for directed verdict, should have disposed of the case, preferably, we think, on motion for summary judgment with the tax returns before the court.

A careful examination of the returns in connection with the language of the statute makes it perfectly clear that the five year statute does not apply to this case. The only circumstance that extends the period from three to five years is the language in Section 275(c)—"If

the taxpayer omits from *gross income* an amount properly includible therein * * *." (Emphasis added.)

There is no item on the face of the tax return form (Form 1040) that is denominated "gross income." There is a place on the first page of the form for a total. This is line 6, which states: "Add amounts in items 2, 3, 4 and 5 and enter the total here." In the return for 1946 the taxpayer here entered a figure of 50,-947.34. Lines 2, 3, 4, 5 and 6 are reproduced below:

2. Enter total wages, salaries, bonuses, commissions, and other compensation received in 1946, Before Pay-Roll Deductions for taxes, dues, etc. .............................. $

3. Enter here the total amount of your dividends ....... 300.00

4. Enter here the total amount of your interest (including interest from Government obligations unless wholly exempt from taxation) .. 2,302.70

5. If you received any other income, give details on page 2 and enter total here ............. 48,344.64

6. Add amounts in items 2, 3, 4 and 5 and enter total here .............................. 50,947.34

By referring to page 2 as instructed on line 5, we find a sub-heading "Schedule D Gains and Losses from sales or exchanges, capital assets, etc.", and on line 1 under that heading "Net gain (or loss) from sale or exchange of capital assets

---

ment, at any time within 5 years after the return was filed."

4. The motion for summary judgment asserted that the assessments were barred by the three year statute of limitations, and that the "pleadings and admissions on file show that there is no genuine issue as to any material fact on the issue whether the assessment and collection of the amount claimed was barred by the statute of limitations * * *." The plaintiff sought admissions from the government that would have placed before the court the fact that schedules attached to the returns disclosed the correct total gross income from sales of cotton in the tax years, but the government avoided the issue by saying, "Defendant alleges that he is without knowledge or information sufficient to answer Request No. 11, as the information called for is within the possession of the plaintiff." The defend-

ant, having access to the original return, was, of course, not without knowledge or information as to what it contained, but this evasive answer left the record before the trial court without the original tax return and schedules or an admission by the government as to what they disclosed. Since the government was required to bring the taxpayer within an exception to the general rule of three years limitation, it may well be questioned whether, on a summary judgment hearing, the burden was not on the government to show the facts on which it relied. However, we need not answer that question, since the taxpayer reserved the point again by making a motion for a directed verdict at the conclusion of the case. By that time the original returns and attached schedules were in evidence.

(from separate Schedule D)" and a figure is there entered $28,532.10. We then find a separate Schedule D as part of the return. Under a heading "Long-term gains and Losses-Assets Held for More than 6 Months" is an entry showing sale of cotton acquired at a cost of $32,060.-98, sold on November 9, 1946 for $58,-406.42, and under a printed heading "Gain or loss" the figure $26,345.44; there is then, under a heading entitled "Gain or loss to be taken into account" column 9 headed "percentage" and column 10 headed "Amount." Opposite the transaction mentioned, the figure in the percentage column is 50 and the figure in the amount column is $13,172.72. On the next line there are corresponding entries of a second transaction, stated in the same way, showing gain of $30,718.-76, and a final figure in the amount column of $15,359.38, which is 50% of the gain. There is then a total of these two final figures, and this total is the figure $28,532.10, which is incorporated into the schedule on page 2, which in turn is carried forward to page 1, line 5. It there becomes a part of the total of $50,-947.34, which is next mentioned on page 3 of the return where the tax is computed. Here, on line 1, the instructions are: "1. Enter amount shown on item 6, page 1. *This is your Adjusted Gross Income.*" This is the only place in the return that the words "gross income" are used. Clearly this figure is not intended to include 100% of the gain from sale of long term capital assets, because, under the instructions of the return itself, it is arrived at by including only 50% of such gains.

There is no place in the return to include in one figure what might be called "gross income," because such figure as used in an ordinary or accounting sense is not an ingredient in the total that is finally subjected to the application of the tax rates.

The on'y way in which the taxpayer here could satisfy the government's requirement that he state his "gross income" in a way to permit a tax computation of the amount the government claims is due, would be for him to abandon his claim that he was entitled to capital gains treatment of the sales in question. No such penalty was intended by Congress in extending the statutory period to five years in case of substantial omission. It cannot be thought that if a taxpayer accurately fills in every blank space provided for his use in the income tax form, giving every "gross" or maximum figure called for, and arrives at an incorrect computation of the tax only by reason of a difference between him and the Commissioner as to the legal construction to be applied to a disclosed transaction, the use of a smaller figure' than that ultimately found to be correct in one stage of the computation amounts to an omission from "gross income" of the difference between the correct and incorrect item.

As above stated, there is no place in the many lines of Form 1040 where the gross figure of $26,345.44 for 1946 and of $30,718.76 for 1947 could be used in any column of figures the total of which represented "gross income," unless he simply determined not to claim that the sales in question were of capital assets held longer than six months.

No case has been cited to us dealing with this precise point. The closest to it is Carew v. Commissioner of Internal Revenue, 6 Cir., 215 F.2d 58. In that case the only item of income reported by the taxpayer was in line 4, page 1, which referred to page 2, and thus to Schedule C of the return. This schedule showed the operation of a proprietary business owned and operated by the taxpayer, and in computing the net profit to carry forward to line 4 on page 1 of the return, he entered an item of "gross profit" of $7,-000.47. The Commissioner found that he had omitted completely from his return any information as to a net capital gain of $4,556.20. Considering the item of "gross profit" as satisfying the statutory definition of "gross income," the court held that, since $4,556.20 was more than 25% of $7,000.47 there was such omission as satisfied the statute. Not only do we think that there is strong

support for the views of the dissenting judge that such decision was wrong, but we also point to the distinction that in the return in that case the item of $4,-556.20 was entirely omitted from the return, a circumstance that would distinguish the case even if the "gross profit" figure were properly considered to be the same as "gross income" as used in the statute.

In the case of O'Bryan v. Commissioner of Internal Revenue, 9 Cir., 148 F.2d 456, 460, the Ninth Circuit held that where a complete return was filed by the taxpayer, who used only one-half of his actual income figures in each stage of his computation of the tax, the fact that he stated that he was using only 50% of each total figure because his wife was filing a separate community property return and using the remaining 50% of each figure, did not prevent his reporting of only one-half of the total income as his from being an omission of 50% of his income from "gross income." The court, in its opinion, said:

"To satisfy the terms of the section, the figure which represents gross income and from which net income is derived must not be understated by an amount in excess of 25 per cent of the figure."

In the case before us the figure which represented the gross gain from the sales in question, and from which net income was derived, was fully and accurately stated. It was not understated as it was in O'Bryan. The reasoning there applied is thus not controlling in this case.[5]

The case of Foster's Estate v. Commissioner of Internal Revenue, 5 Cir., 131 F.2d 405, 406, decided by this court, does not support the government's contention. There the original return omitted entirely any information as to some $10,-000 of income. In an amended return, filed six months later, a statement was added to the effect that the income there listed did not " 'include $10,302.20 received in August, 1936 * * * tax on said $10,302.20 was paid by estate of Elwin C. Foster.' " We held that the inclusion of this information in an amended return did not prevent its omission from the original return from being such an omission as satisfied the five year statute.

The two cases decided by the Court of Appeals for the Third Circuit recognize that either construction could be placed on this statute, and largely on the basis of the legislative history, it makes the test the question whether a specific item of income has been completely omitted from the return.[6] To this legislative history is now added the amendment contained in the 1954 Internal Revenue Code, under the terms of which it is now clear that the inclusion of the statement made by appellee in his return here would be sufficient to prevent application of the five year statute.[7] In view of the confusion as to the meaning of the statute prior to the adoption of the 1954 Code, we think it plain that the new language was enacted to clarify the existing law.

On logic as well as precedent, therefore, we find that the full and complete statement by the taxpayer of every gross item of income and gain received by him

---

5. The later case of Slaff v. Commissioner, 9 Cir., 220 F.2d 65, indicates that the Ninth Circuit approves the reasoning of the Third Circuit Court of Appeals in Deakman-Wells Co. v. Commissioner, 3 Cir., 213 F.2d 894, and Uptegrove Lumber Co. v. Commissioner, 3 Cir., 204 F.2d 570, both of which take a more liberal view.

6. See Deakman-Wells Co. v. Commissioner, supra, footnote 5, and Uptegrove Lumber Co. v. Commissioner, supra, footnote 5.

7. Section 6501(e), (1), (A), (ii), I.R.C. 1954, reads:
"In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item."

as required by the return itself, rebuts the contention of the Commissioner that the five year statute applies to this case.

The judgment appealed from is

Affirmed